# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 21, 2007

133992

CITY OF DETROIT DOWNTOWN
DEVELOPMENT AUTHORITY,
   Petitioner-Appellant,

v

US OUTDOOR ADVERTISING, INC.,
and CITY OF DETROIT BOARD OF
ZONING APPEALS,
   Respondents-Appellees,
_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 133992
COA: 262311
Wayne CC: 04-439264-AV

On order of the Court, the application for leave to appeal the April 12, 2007 judgment of the Court of Appeals is considered and, pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we REVERSE the Court of Appeals judgment that held that the plaintiff lacked standing to challenge the Detroit Board of Zoning Appeals decision regarding the variance for the property located at 124 Cadillac Square. This Court has adopted a three-part test for standing that requires (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a causal connection between that injury and the complained of conduct; and (3) that the injury will be redressed by a favorable decision. *Michigan Citizens v Nestlé Waters*, 479 Mich 280, 294-295 (2007). In this case, plaintiff has shown that it has made substantial investments in the area surrounding the variance, that it owns nearby buildings, and that it has a supervisory authority over the development district that encompasses the variance. Further, plaintiff has shown that the variance will potentially cause economic injury to its interests. Because a judgment in favor of plaintiff will eliminate these injuries, plaintiff has established standing to challenge the variance. We REMAND this case to the Court of Appeals for consideration of defendant's remaining issues.

CAVANAGH, J., concurs in the reversal.

WEAVER, J., concurs and states as follows:

I concur in the order reversing the Court of Appeals judgment and remanding this case to the Court of Appeals for consideration of defendant's remaining issues, because I

agree that the plaintiff has standing to challenge the Detroit Board of Zoning Appeals decision regarding the variance for the property located at 124 Cadillac Square.

I write separately because I disagree with the application of the majority of four's (Chief Justice Taylor and Justices Corrigan, Young, and Markman) erroneously created standing test in *Lee v Macomb Co Bd of Comm'rs*,[1] *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*,[2] *Rohde v Ann Arbor Pub Schools*,[3] and *Michigan Citizens for Water Conservation v Nestlé Waters North America Inc*.[4] In those cases, the majority of four systematically dismantled Michigan's standing law and replaced years of precedent with its own test that denies Michigan citizens access to the courts.[5]

I would hold that the plaintiff has standing under the pre-*Lee* prudential test for standing because the plaintiff has demonstrated "that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large." *House Speaker v State Administrative Bd*, 441 Mich 547, 554 (1993).

KELLY, J., concurs in the result only.

MARKMAN, J., concurs and states as follows:

It is by now a customary part of Justice Weaver's separate statements to condemn some purported judicial "assault" by the "majority of four." Here, the object of the Court's assault is denying "citizens access to the courts" and stems from the Court reaffirming, over Justice Weaver's dissent, that the "judicial power" in Michigan requires that the parties have standing. While I am content to rely on this Court's previous opinions, see e.g., *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608 (2004), as well as those of the United States Supreme Court, see, e.g., *Lujan v Defenders of Wildlife*, 504 US 555 (1992), in support of the necessity of standing, Justice Weaver's statement prompts me to remind the bench and bar of the constitutional and other values served by the standing doctrine. This is the doctrine that parties to a lawsuit must have a concrete and particularized interest in that lawsuit distinct from the interest of the people as a whole.

---

[1] *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726 (2001).
[2] *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608 (2004).
[3] *Rohde v Ann Arbor Pub Schools*, 479 Mich 336 (2007).
[4] *Michigan Citizens for Water Conservation v Nestlé Waters North America Inc*, 479 Mich 280 (2007).
[5] See my opinions chronicling the majority of four's assault on standing in *Lee*, 464 Mich at 742; *Nat'l Wildlife*, 471 Mich at 651; *Rohde*, 479 Mich at 366; and *Michigan Citizens*, 479 Mich at 310.

(1) The requirement of standing ensures that the judiciary will exercise only the "judicial power" by resolving actual "cases and controversies," rather than also exercising the powers of the Governor and the executive branch by addressing matters of policy and law enforcement that are appropriately part of the "executive power."

(2) The requirement of standing ensures that the judiciary will exercise only the "judicial power" by resolving actual "cases and controversies," rather than deciding matters in which there are no coherent legal standards or rules but simply policy judgments to be exercised.

(3) The requirement of standing ensures that citizens will have genuine "access" to government by preserving decision-making authority in the most representative and accountable branches of government and thereby allowing citizens to effectively exercise their constitutional right to "petition the Government for a redress of grievances." US Const, Am I; see also Const 1963, art 1, § 3.

(4) The requirement of standing ensures that the constitution ratified by "we the people" of Michigan will be accorded respect by restricting institutions of government to the exercise of their proper powers and by upholding the principle of the separation of powers.

(5) The requirement of standing ensures that the Legislature will not diminish the powers of the executive branch by transferring its powers to the judiciary. "To permit [the Legislature] to convert the undifferentiated public interest in executive officers' compliance with the law into an 'individual right' vindicable in the courts is to permit Congress to transfer from the President to the courts the Chief Executive's most important constitutional duty, to 'take Care that the Laws be faithfully executed.'" *Lujan*, supra at 577 (citation omitted).

(6) The requirement of standing ensures that ours will not become a government of lawyers by lawyers and that the power of judges will be restricted to matters traditionally within the authority of the courts and not extended to matters traditionally within the authority of the executive.

(7) The requirement of standing ensures that citizens will continue to have meaningful control over their own government by reposing policy decisions in the branches of government that are the most directly representative and accountable to the people. To dilute standing is not to enhance the access of ordinary citizens to their own government, but only to enhance the role of judges, lawyers, and litigating organizations in the formulation of public policy.

(8) The requirement of standing ensures that policy will be established on the basis of information, derived in the course of legislative and executive hearings and investigations from the testimony of individuals and organizations of a broad range of interests and perspectives, rather than only from the plaintiff and the defendant in a lawsuit.

(9) The requirement of standing ensures that historical constitutional restraints and limitations on the judiciary will be maintained to balance the judiciary's authority with that of the other branches of government within our system of separated powers.

By seeking to erode the standing doctrine in Michigan, Justice Weaver does not facilitate "access" by citizens, but only the establishment of a more powerful judiciary. In the end, such an establishment would inevitably undermine access by the people to the most representative and accountable institutions of their own government.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 21, 2007

Clerk

p1218